UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT D. SANGO #252200,                          Case No.   2:20-cv-00213

      Plaintiff,                                  Hon.  Hala Y. Jarbou
                                                  U.S. District Judge

   v.

UNKNOWN FLRUEY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This is a civil rights action brought by state prisoner Robert D. Sango pursuant to 42 U.S.C. § 1983.   Sango alleges in his verified complaint that Corrections Officer (CO) Flruey[1] threatened to kill him and his mother after Sango implicated Flruey in distributing illegal drugs to prisoners.

CO Flruey filed a motion for summary judgment and Sango has responded. (ECF Nos. 15 and 17.)   Sango admits that he did not exhaust his administrative remedies.   Sango says that Flruey threatened his life and his mother's life due to the lawsuits he had filed.   Sango reasons that because he was threatened with physical harm, he could file a complaint directly with the District Court without first exhausting his administrative remedies.

_____

[1]     The complaint refers to Defendant as "Flruey."   The correct spelling appears to be Fleury.   (ECF No. 15, PageID.71.)

Sango asserts in his complaint that the alleged threat was a result of his action in reporting CO Flruey to Assistant Deputy Warden (ADW) Mercier during a grievance interview.   Sango says he told ADW Mercier that Flruey and other COs were trying "to give a prisoner a sheet of K-2 (worth $2,000 or better in prison) to stab prisoners who write grievances and lawsuits on staff." (ECF No. 2, PageID.3 (parenthetical comment in original).)   Sango also reported that "staff had a part in drugs and alcohol being sold and used in the unit."   (Id.)   He says that staff "cut it off after . . . the unit had a peaceful protest (hunger strike) to bring attention to staff violating [regulations COVID-19]."   (*Id.* (parenthetical in original).)   Sango says that Mercier could not provide him with any answer or explanation.   (*Id.*)

Sango alleges that, on October 5, 2020, CO Flruey searched his cell and saw personal mail from his family.   (*Id.*)   Sango says that when he went to breakfast on October 10, 2020, Flruey followed him to the chow hall and said "450 South Washington, Battle Creek, Michigan, I have people watching the bitch to take her to Wisconsin for a mock trial to cut her head off.   You'll be dead (speaking of me) before she will."   (*Id.*, PageID.4 (parenthetical in original).)   Sango explained that this was his mother's home address.   (*Id.*)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny CO Flruey's motion for summary judgment because there exists a genuine issue of material fact whether the grievance system was available to Sango before he filed his complaint.

## II.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).   The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.   *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).   "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

---

[2]   Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers

- 4 -

are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration.   *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.   Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.   *Id.* at

¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.   *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.   *Id.*   Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.   The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.   *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.   It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV.  Analysis

Sango admits that he did not exhaust his administrative remedies before he filed his complaint. Sango argues in his response brief that "Defendants did threaten

---

[3]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

plaintiff's mother's life because he filed multiple civil actions against him." (ECF No. 17, PageID.111.) In his declaration of facts, Sango asserted "under penalty of perjury" that Defendant Flruey referred to Sango's mother and threatened to "cut her head off." (ECF No. 18, PageID.114.) Sango argues that under *Ross v. Blake*, these threats relieved him of the obligation to exhaust his administrative remedies prior to filing this federal lawsuit. In *Ross*, the Supreme Court stated "appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable." *Ross*, 136 S. Ct. at 1860. Ross held that the grievance process is unavailable when prison officials thwart efforts to take advantage of the process "through machination, misrepresentation, or intimidation." *Id.*, at 1860. A threat made against a prisoner because of his litigation activities may thwart a prisoner's use of the grievance system. *Does 8-10 v. Snyder*, 945 F.3d 951, 967 (6th Cir. 2019) (retaliatory harassment and threats of harm, if true "render the grievance process functionally unavailable for a person of ordinary firmness").

Sango raised a similar issue in *Sango v. Brandt*, 1:19-cv-58, 2019 WL 8399788 (Dec. 6, 2019), order adopting report and recommendation, 2020 WL 1814111 (W.D. Mich. April 9, 2020). In *Sango v. Brandt*, Sango made allegations of intimidation in a verified complaint. 2019 WL 8399788, at *1. Sango asserted that he had exposed prison corrections officers' involvement in selling illegal drugs to prisoners. *Id.* Sango asserted that the implicated corrections officers threatened him with physical

violence. *Id*. Sango feared harm would result if he reported the officers' wrongdoing by filing a grievance. *Id*. Sango argued that the grievance process was not available to him due to intimidation. *Id*. The Court concluded that the grievance process was unavailable because intimidation through threats of physical violence could prevent a prisoner from reporting wrongdoing through the grievance process. 2020 WL 1814111, at *1.

In this case, Sango asserts that Defendant Flruey specifically threatened him and his mother with physical violence and harm due to his past lawsuits. Sango says that these threats rendered the grievance process unavailable because of intimidation. Defendant has not addressed Sango's assertion. As in *Sango v. Brandt*, because Sango has asserted allegations involving threats of physical harm and violence, he has "satisf[ied] any reasonable definition of 'intimidation'" which arguably renders the grievance process unavailable. *Sango v. Brandt*, 2020 WL 1814111 at *1.

## V.  Recommendation

The undersigned respectfully recommends that this Court deny Defendant's motion for summary judgment because a question of fact exists regarding whether threats of physical harm rendered the grievance process unavailable to Sango. CO Flruey may request a bench trial to resolve the issue of exhaustion pursuant to *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

Dated:    April 30, 2021                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).